**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TODD M. TOKARZ, | ) |
| | ) |
| Plaintiff, | )     No. 22 C 6769 |
| | ) |
| v. | )     Judge John J. Tharp, Jr. |
| | ) |
| FRANK J. BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth in the opinion below, the plaintiff's motion to reverse the decision of the Commissioner of Social Security [14] is denied, and the Commissioner's motion for summary judgment [19] is granted. Civil case terminated.

**BACKGROUND**

Todd Tokarz sustained a fall outside of a Target store in 2018, when he was 48 years-old. Since then, he has suffered from shoulder, neck, and back pain consistent with lumbar and cervical radiculopathy. In 2019, he started attending weekly physical therapy sessions. A.R. 374. His physical therapist observed substantial difficulties related to mobility and coordination, but noted some improvement with treatment. *Id.* However, Tokarz continued to experience pain. He went to the emergency room for intense pain in his right shoulder in March. A.R. 322. He underwent several rounds of epidural steroid injections (ESIs), receiving injections at L5-S1 in April and August, and an injection at C7-T1 in September. A.R. 376, 396, 400. In early November 2019, he reported that the last ESI had relieved pain for several weeks. A.R. 1282.

Later that month, Tokarz sought information about potential surgical intervention, citing consistent pain. A.R. 499. The physician observed that Tokarz walked with an antalgic gait and

had a restricted range of motion of the cervical spine. MRIs reflected cervical and lumbar stenosis. However, the physician informed Tokarz that because of his obesity and diabetes, he was not a candidate for surgery. *Id.* At his annual physical in December, Tokarz reported that the pain medication he was taking at the time was not helping. A.R. 546. At a neurosurgery consultation in January 2020, Tokarz was informed that surgery may require fusion, which Tokarz did not want. A.R. 298. He got a second opinion from another neurosurgeon in March of that year. A.R. 524. He was advised that surgical intervention would likely be a two-level cervical fusion. *Id.* Surgery would only be considered if additional physical therapy and ESIs were ineffective. *Id.*

For the next several months, Tokarz continued to experience pain in his neck and lower back. He ultimately underwent a surgical procedure known as anterior cervical discectomy and fusion (ACDF) at C7-5 in October 2020. A.R. 1753. After the surgery, he reported intense pain and was proscribed pain medication and physical therapy. *Id.* In December, he inquired about another surgical procedure to address his lumbar radiculopathy. A.R. 1787. He was advised that he would benefit from lumbar decompression and fusion but was not a candidate due to his obesity. *Id.* In January 2021, he started dieting and trying to lose weight. A.R. 2063. He reported that his pain medications were allowing him to function more efficiently and care for his young autistic son. A.R. 2068. In the following months, Tokarz reported additional relief after receiving ESI and ketamine treatment. A.R. 2083, 2093.

In April 2021, Tokarz presented to the emergency room and said that his medications were no longer effective at managing pain. A.R. 1923. He underwent a L4-S1 hemilaminectomy that May. A.R. 1805. He developed an epidural hematoma at the site of the procedure, which was removed a few days later. *Id.* After those procedures, Tokarz continued to experience pain in his elbow and neck and down his legs, and started experiencing a new pain in his shoulder. A.R. 2204.

However, he reported that his pain medication helped to manage his symptoms and improve functionality without side effects. *Id.* In June, he reported experiencing 70% pain relief after ketamine treatment. A.R. 2222.

## PROCEDURAL HISTORY AND ALJ DECISION

Tokarz applied for supplemental security income on March 19, 2020. His claim was initially denied on July 28, 2020, and again upon reconsideration on December 28, 2020. Both of the evaluating state agency doctors found Tokarz capable of light work subject to certain postural, manipulative and environmental restrictions. A.R. 61, 73. Tokarz submitted a request for a hearing, which was held on July 26, 2021. A.R. 31. At the hearing, Tokarz testified as to his condition and its impact on his everyday life. He stated that he regularly experienced severe pain in his arm, hands, knees, legs, and lower back. A.R. 45. He further stated that he could not stand or sit for more than 15 minutes at a time, and that he needed a walker while standing. A.R. 46-47. When asked to describe his typical day, he said that he "get[s] up, go[es] to the bathroom, and go[es] to the chair." A.R. 49. He claimed that his symptoms had only gotten worse since his surgeries. A.R. 39-40. Tokarz did not present any additional medical opinions, leaving the evaluations of the state agency doctors as the only opinions of record.

The ALJ concluded that Tokarz was not disabled within the meaning of the Social Security Act and issued an unfavorable decision on October 12, 2021. The ALJ's opinion follows the standard five-step inquiry. *See* 20 C.F.R. §§ 404.1509, 404.1520. At step one, he found that Tokarz had not participated in gainful employment since the date of the disability application and was thus not automatically disqualified from receiving benefits. A.R. 16. At step two, he found that Tokarz had the following severe impairments: degenerative disc disease of the cervical spine status post anterior cervical discectomy and fusion (ACDF); degenerative disc disease of the lumbar spine

status post hemilaminectomies; right shoulder tendonitis; obstructive sleep apnea; and obesity. A.R. 16-17. But at step three, he determined that Tokarz was not conclusively disabled according to any of the enumerated regulatory listings. AR 17-18.

When a claimant has severe impairments but is not conclusively disabled, the ALJ must determine the claimant's residual functional capacity (RFC), which is "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant's RFC allows them to perform the requirements of past relevant work (step four) or any other work (step five), the claimant is not disabled.

Here, the ALJ found that Tokarz had the capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except for the following limitations:

> "stand/walk 4 hours in an 8-hour workday; occasionally reach overhead bilaterally; frequently handle and finger bilaterally; occasionally climb ramp and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights; never work near moving mechanical parts; occasional exposure to humidity, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat."

A.R. 22. Tokarz had not worked since 2006 and had no relevant past work to consider. A.R. 24. Because the RFC did not preclude Tokarz from being able to perform a significant number of jobs in the economy, the ALJ concluded that Tokarz was not disabled within the meaning of the Social Security Act. A.R. 25.

The Appeals Council denied Tokarz's request for review on October 5, 2022, rendering the ALJ's decision the final decision of the Commissioner. AR 1.

4

**DISCUSSION**

Section 405 of the Social Security Act authorizes judicial review of the Commissioner's final decision regarding a claimant's disability status. 42 U.S.C. § 405(g). A reviewing court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, the court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[I]f substantial evidence supports the disability determination, [the reviewing court] must affirm the decision even if reasonable minds could differ about whether the claimant is disabled." *Chrisman ex rel. N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025).

Tokarz brings two principal challenges to the ALJ's opinion. First, he argues that the ALJ did not provide a sufficient "logical bridge" between the evidence and the RFC. Second, he argues that the ALJ impermissibly discounted his testimony regarding the severity of his symptoms. The Court considers each challenge in turn.

I.      **RFC Determination**

ALJs must explain the reasoning behind their conclusions in a manner that is "sufficient to allow a reviewing court to assess the validity of the agency's ultimate findings and afford the plaintiff meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (citation altered). "[A]t times," the Seventh Circuit has "put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Warnell v.*

*O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (citation omitted). But the Seventh Circuit has also cautioned that ALJ decisions "are subject to only the most minimal of articulation requirements." *Id.* at 1053. "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Furthermore, an insufficient explanation for a particular finding does not automatically trigger remand. "[That] kind of error is subject to harmless-error review, and [a reviewing court] [should] not remand a case to the ALJ for further explanation if [it] can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

This Court will address Tokarz's specific challenges to the ALJ's RFC determination below. At the outset, however, it is worth noting that most of his arguments fail because they demand a far greater degree of articulation than the law requires. The logical bridge requirement "is all about substance and not form." *Warnell* 1053. Thus, "[a]n ALJ need not . . . cite support for every proposition or chain of reasoning." *Id.* Indeed, the Seventh Circuit has recently suggested that an ALJ only fails to satisfy the logical bridge requirement if "the evidence cited by the ALJ had little or no apparent bearing on the ALJ's conclusion." *Lincoln v. Bisignano*, No. 24-2668, 2026 WL 1097737, at *4 (7th Cir. Apr. 23, 2026) (citation omitted). That is not the case here.

Consider, for example, the ALJ's decision to diverge from the state doctors' RFC findings. The state doctors limited Tokarz to six hours of standing and walking daily, with frequent overhead reaching. A.R. 66-67, 82-84. They did not opine on any fingering and handling restrictions. The ALJ, by contrast, limited Tokarz to four hours of standing and walking and occasional limited overhead reaching. A.R. 18. The ALJ also found Tokarz capable of frequent handling and fingering. *Id.* He determined the state doctors' opinions to be "partially persuasive," but explained

6

that "evidence received after their review support[ed] some additional limits." A.R. 23. According to Tokarz, the ALJ was required to point to particular evidence, not just "evidence received after their review." However, the ALJ *did* point to specific evidence: in the preceding paragraphs, he discusses the May 2021 surgery, as well as medical records pertaining to Tokarz's recovery that indicate continued pain down his neck, arms, and legs, as well as particular difficulties with his left hand. A.R. 23. Reviewing courts "appl[y] a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). Here, viewing the opinion as a whole, this Court can easily "trace the path" of the ALJ's decision to include more restrictive limitations than those ascribed by the state doctors.[1]

Tokarz also argues that the ALJ failed to adequately grapple with symptoms that he reported at his oral hearing. Specifically, he testified that he needed to take naps throughout the day, could only stand for 15 minutes at a time with the assistance of a walker, and experienced debilitating side effects from his medications. The ALJ's opinion acknowledged that testimony,

---

[1] The Commissioner seems to argue that, as a categorical matter, Tokarz cannot show that he was harmed by the ALJ's departure from the state doctors' RFC findings because the ALJ broke in his favor. This Court will not go so far. Any administrative decision can result in harm to a claimant if it is not supported by substantial evidence. However, the Court does note that the record does not contain any medical opinion advocating the degree of limitation that Tokarz seeks. Such an absence *is* relevant to the substantial evidence inquiry. *See, e.g.*, *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of [any opinion from a doctor who would have imposed greater restrictions than those the ALJ found] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal."); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."); *Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.") (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

7

A.R. 19, but found it to be inconsistent with the record, which demonstrated "significant improvement in functioning," A.R. 23. Tokarz claims that this explanation falls short of the mandate of SSR 96-8p, which requires RFC assessments to "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." 1996 WL 374184, *7 (July 2, 1996). Again, Tokarz fails to consider the opinion as a whole. Although the quoted sentence does not point to evidence of "significant improvement in functioning," the ALJ's summary of the medical record does. For example, the ALJ notes that Tokarz demonstrated full strength at no less than four different appointments between October 2020 and April 2021 and experienced significant pain relief from ketamine shots and ESIs in February and May 2021. A.R. 21-23. Those and other normal examination findings offer a reasonable basis for rejecting Tokarz's purported, but unsupported, limitations.

Furthermore, an ALJ should "only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Tokarz provides a slew of citations to the record that—in his view—corroborate his testimony regarding his inability to stand or sit for extended periods and his daytime sleepiness.[2] To be sure, an ALJ may not ignore an

---

[2] The ALJ incorrectly wrote that the medical record did not "mention the use of an assistive device beyond short-term use of crutches." A.R. 17. As Tokarz points out, the record contains two references to a cane by medical professionals. *See* Reply 11, ECF No. 21 (citing A.R. 623, 2028). But the fact that the cane only appears twice in over two thousand pages of medical documents only lends support to the ALJ's finding. Moreover, courts have upheld ALJ decisions rejecting cane-related limitations where the record contained more references to canes than the record does here. *See, e.g.*, *Lincoln*, 2026 WL 1097737, at *3 (upholding ALJ determination that claimant did not require a cane on the basis of normal medical findings despite "portions of the record indicating he increasingly used a cane" during the same period). To the extent the ALJ committed error, it was harmless.

entire line of evidence that is favorable to the claimant. But he also "need not address every piece or category of evidence" that a claimant raises. *Warnell*, 97 F.4th at 1053. The ALJ properly walked that line here. With regard to Tokarz's walking and standing capacity, the ALJ acknowledged some observations of an antalgic gait, *see* A.R. 20-21, but found that evidence to be outweighed by findings of a normal gait, full strength, and positive responses to treatment during the period of alleged disability. As for daytime sleepiness, Tokarz points out that the ALJ did not directly address his purported need to lay down and take several naps throughout the day. But a thorough discussion of that testimony was not warranted: this Court does not see any reference to excessive napping in the medical reports, nor does Tokarz point to one. *See Ryan T. v. Bisignano*, No. 22 C 7245, 2025 WL 1426142, at *3 (N.D. Ill. May 16, 2025) ("[N]o physician, treating or otherwise, has ever indicated that there was a medical reason why [plaintiff] would need to lay down . . . during the day.") (citing *Imse v. Berryhill*, 752 F. Appx. 358, 362 (7th Cir. 2018)).

Tokarz also criticizes the ALJ for not adequately considering the combined effect of his obesity and lumbar issues. However, the ALJ clearly considered both conditions. He noted Tokarz's BMI at several points in the opinion, as well as Tokarz's attempts to lose weight. A.R. 20, 22. He discussed Tokarz's lumbar disease throughout. Tokarz's point seems to be that the ALJ was required to specifically consider how these conditions interact with each other. But the Seventh Circuit has explained that an ALJ need only "***acknowledge*** having considered the aggregate effect [of multiple conditions], as long as the ALJ discusses each symptom." *Lott v. Colvin*, 541 F. App'x 702, 706 (7th Cir. 2013) (emphasis added). Here, the ALJ stated that he considered the "combination of impairments" at step three and "considered all symptoms" in his

RFC determination. Those acknowledgments are "sufficient to show that the ALJ accounted for the aggregate effect of [Tokarz's] symptoms." *See id.*

## II.      Subjective Symptom Evaluation

Tokarz also claims that the ALJ's subjective symptom evaluation was improper. Those determinations "are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may only overturn an ALJ's subjective symptom evaluation "if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* at 816 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)).

In this case, Tokarz testified that he experienced extremely limited mobility and consistent fatigue, as well as increased pain since his surgeries. He further reported that his condition prevented him from doing a variety of everyday tasks, like cutting up food, doing the dishes, and taking out the trash. A.R. 50-52. The ALJ found that "the alleged severity is not supported by the medical records." A.R. 19. Tokarz argues that this explanation is nothing more than meaningless boilerplate. *See* Br. Supp. Reversal 12, ECF No. 14 (citing *Parker v. Astrue* 597 F.3d 920, 922 (7th Cir. 2010)). The Court does not disagree that the ALJ's phraseology here leaves something to be desired. But "[t]he fact that the ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). That is the case here, for the ALJ went on to include a lengthy discussion of Tokarz's medical history, with specific references to normal examination findings and positive responses to treatment. *See id.* (use of boilerplate language was not legal error where the ALJ provided "a detailed recitation of the medical evidence in this case"). Furthermore, the ALJ did not fail to

10

weigh the challenges that Tokarz faced in performing daily activities, as Tokarz argues. The ALJ acknowledged "the claimant's reported limited daily activities," but found them to be "outweighed by the other factors discussed in this decision." A.R. 19.

Tokarz also takes aim at the ALJ's finding that "[s]ome of the claimant's activities, such as taking care of an autistic son, are inconsistent with the alleged [symptom] severity." A.R. 23. According to Tokarz, the ALJ was required to point to "specific acts [] performed in caring for his son which undermined his problems with standing and walking due to back pain." Br. Supp. Reversal 12. But it is well-established that ALJs can use a combination of "objective evidence and common sense" to evaluate whether alleged symptoms establish an inability to work. *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010). Tokarz's implicit suggestion that one could look after a young child without moving from a recliner is unpersuasive; it is reasonable to assume that some additional physical exertion would necessarily be involved. Furthermore, in January 2021, Tokarz reported that his pain medication allowed him to be functional during the day to take care of his son. A.R. 2065, 2068. Given the sharp contrast between that evidence and Tokarz's testimony, this Court will not conclude that the ALJ's determination was patently wrong.

As Tokarz points out, courts should not equate the ability to engage in daily activities, like supervising a child, with the ability to engage in full-time work. *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). Here, however, the ALJ did not draw a straight line between the two. He merely found that Tokarz's ability to take care of his child was inconsistent with the alleged severity of his symptoms. Furthermore, Tokarz's child care activities were not the only basis for the ALJ's symptom evaluation. The ALJ also noted positive responses to certain pain management treatments in the record, contradicting Tokarz's testimony that his pain had only gotten worse since his surgeries. A.R. 23. On this point, Tokarz argues that the ALJ's review of the record was

11

factually selective. But he then goes on to cite a heap of evidence that the ALJ explicitly discussed, including Tokarz's visits to the emergency room, his surgical procedures, and his extensive use of pain medication. Clearly, the ALJ considered that evidence and found it to be outweighed by reports of progress. Tokarz essentially asks this Court to reweigh the evidence, which it cannot do.

*　　*　　*

In summary, the ALJ did not err in his RFC finding or his evaluation of Tokarz's subjective symptoms. Tokarz challenges the decision on a variety of grounds, arguing that the ALJ failed to provide sufficient explanation for his findings and that he failed to adequately weigh certain evidence in the record. However, the Court finds that the decision, read holistically, provides an adequate logical bridge between the evidence and the ALJ's conclusion. Because the decision is supported by substantial evidence, the Commissioner's motion for summary judgment is granted and Tokarz's motion for reversal is denied.

Date: May 1, 2026

John J. Tharp, Jr.
United States District Judge